IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

BRENDA SALINAS NAVARETTE;                    Civ. No. 6:22-cv-00181-AA
SHONNA HUNTER; JESSICA BERRA;                        6:22-cv-00187-AA
NANETTE TRIMMIER,                                    6:22-cv-00219-AA
                                                     6:22-cv-00243-AA
                        Plaintiffs,
                                             **OPINION & ORDER**
            vs.

PEACEHEALTH,

                        Defendant.
_____

AIKEN, District Judge:

    Plaintiffs Brenda Salinas Navarette, Shonna Hunter, Jessica Berra, and
Nanette Trimmier bring religious discrimination claims against their former
employer, Defendant PeaceHealth, under Title VII of the Civil Rights Act of 1964,
42 U.S.C. §§ 2000e *et seq*., and under ORS 659A.030. *See* Compl., ECF No. 1. Before
the Court is Plaintiffs' Consolidated Motion for Leave to Amend, which also contains
a Motion to Consolidate the cases going forward. For the reasons stated below,
Plaintiffs' Motions to Amend and Consolidate, ECF No. 37, are DENIED.

BACKGROUND

    In February 2020, the global COVID-19 pandemic hit Oregon and the United
States. In August 2021, the FDA approved the first COVID-19 vaccine. The Court
takes judicial notice that, on August 5, 2021, the Oregon Health Authority ("OHA")

issued a rule requiring all Oregon healthcare providers and staff to be fully vaccinated against COVID-19 (the "OHA Vaccine Mandate") by September 30, 2021, subject to medical or religious exemption as provided under existing federal law. *Former* OAR 333-019-1010 (Aug. 5, 2021). "Courts may take judicial notice of . . . the 'records and reports of administrative bodies.'" *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (quoting *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)).

In August 2021, Plaintiffs, employees at one of Defendant's health care facilities, were notified that Defendant planned to implement a vaccine mandate in the workplace. Navarette Compl. ¶¶ 5, 11; Hunter Compl. ¶¶ 5, 14, ECF No. 1; Berra Compl. ¶¶ 5, 10, ECF No. 1; Trimmier Compl. ¶¶ 5, 12, ECF No. 1. Plaintiffs were informed by Defendant that they could apply for a religious exemption to the vaccine. Navarette Compl. ¶ 11; Hunter Compl. ¶ 14; Berra Compl. ¶ 10; Trimmier Compl. ¶¶ 12, 13. In August 2021, Plaintiffs applied for and were granted religious exemptions. Navarette Compl. ¶¶ 12, 13; Hunter Compl. ¶¶ 16, 18; Berra Compl. ¶¶ 11, 12; Trimmier Compl. ¶ 13. Plaintiffs were placed on unpaid administrative leave and were later terminated. Navarette Compl. ¶¶ 13, 17; Hunter Compl. ¶¶ 17, 22; Berra Compl. ¶¶ 12, 16; Trimmier Compl. ¶¶ 13, 16, 25.

In February 2022, Plaintiffs filed individual state and federal religious discrimination claims against Defendant based on a failure to accommodate theory. Navarette Compl. ¶¶ 22, 27; Hunter Compl. ¶¶ 28, 33; Berra Compl. ¶¶ 21, 26; Trimmier Compl. ¶¶ 24, 29.

On October 13, 2022, eight months into litigation, the Court issued a case management schedule that the parties had proposed.  ECF No. 14. Under that schedule, all pleadings were to be filed and discovery was to be completed by March 3, 2023.  The pleading deadline lapsed on March 3, 2023.

On July 27, 2023, attorney Chackel filed notice of appearance on behalf of Plaintiffs, ECF No. 27.  On May 23, 2024, Plaintiffs' attorney Janzen, filed notice of withdrawal, ECF No. 30.

On August 1, 2024, the Court ordered the four cases to be consolidated for Plaintiffs' proposed Motion to Amend.  ECF No. 35.

On September 9, 2024, Plaintiffs filed a motion to amend their complaints and a motion to consolidate the matter going forward.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), "after a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).  Further, "leave shall be freely given when justice so requires." *Id.* (internal quotation marks and citation omitted).  In deciding whether to grant leave to amend under Rule 15(a), a court considers five factors: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (quoting *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)).

Where a party moves to amend after a court's deadline for amending the pleadings, Rule 16 governs, and the party must show good cause and obtain the judge's consent to modify the deadline set by the court. Fed. R. Civ. P. 16(b)(4). "[The] 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "If that party was not diligent, the inquiry should end." *Id.*

DISCUSSION

Two and a half years into litigation and eighteen months after the pleading deadline lapsed, Plaintiffs move to amend their complaints. Plaintiffs further move to consolidate all future "pleadings, motions[,] and court filings" in the matter. Pl. Mot. at 4. Defendant opposes both motions.

I.    *Plaintiffs' Motion to Amend*

When a party fails to file their motion to amend within the deadline set by a court's scheduling order, Rule 16's "*more stringent* 'good cause' showing" controls. *AmerisourceBergen Corp. v. Dialysis W., Inc.*, 465 F.3d 946, 952 (9th Cir. 2006) (citing *Johnson*, 975 F.2d at 608) (emphasis in original). Because Plaintiffs filed their Motion eighteen months after the pleading deadline lapsed, they must show "good cause" to amend their Complaint. As discussed below, Plaintiffs have not made a showing of good cause, which justifies denial of the motion under Rule 16. But even under the more lenient Rule 15 standard, Plaintiffs' motion still fails.

A.    *Rule 15*

Plaintiffs argue that their very late Motion to Amend is justified "due to the recent discovery of new evidence that was improperly withheld from Plaintiffs for over one[]year and which supports the [new] claims and allegations asserted in the [proposed] FAC." Pl. Mot. at 2. Plaintiffs' proposed FAC adds new facts and allegations and four new claims or theories of religious discrimination for each Plaintiff. *See id.* at 3–4.

Under Rule 15, "[a] district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen*, 465 F.3d at 951; Fed. R. Civ. P. 15.

1.    *Prejudice to Defendant*

Defendant argues that granting the motion to amend will cause it prejudice because Plaintiffs "seek to . . . add multiple new facts and legal theories of disparate treatment, disparate impact, hostile work environment, and retaliation[,]" with "different elements, different defenses, and different discovery[,] . . . effectively a totally new case." Def. Resp. at 1, ECF No. 42.

Of the four factors that weigh against granting leave to amend, "prejudice to the opposing party . . . carries the greatest weight.*" Eminence Capital*, 316 F.3d at 1052. A court may find prejudice to the opposing party where allowing amendment would "reopen discovery and therefore delay the proceedings." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 986 (9th Cir. 1999). A court may also find

prejudice to the opposing party where an amended complaint asserts a new legal theory at a later stage of litigation.  *See*, *e.g.*, *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (finding that the new claims in an amended complaint "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense."); *AmerisourceBergen*, 465 F.3d at 953 (finding that an amended complaint would "require[ ] the parties to scramble" and "would have unfairly imposed potentially high, additional litigation costs on [defendant]" that could easily have been avoided had the amendments existed in the original briefing); *Peterson v. California*, No. 1:10-cv-01132-SMS, 2011 WL 3875622, at *3 (E.D. Cal. Sept. 1, 2011) ("when, after a period of extensive discovery, a party proposes a late-tendered amendment that would fundamentally change the case to incorporate new causes of action and that would require additional discovery, the amendment may be appropriately denied as prejudicial to the opposing party.").

Plaintiffs first argue that "the case was litigated as a disparate treatment and failure to accommodate case from the beginning[]," Pl. Reply at 4, 11, ECF No. 45, so they "did not believe amendment was necessary to add a separate disparate treatment claim by March 3, 2023 [pleading deadline,]" *id.* at 11.  Plaintiffs also argue that their proposed late amendment does not prejudice Defendant because "written discovery was not yet completed . . . no depositions have been taken, dispositive motions have not been filed[,] and a trial date has never been set[.]"  Pl. Mot. at 16.

a.    *Plaintiffs Did Not Allege a Disparate Treatment Claim*

First, contrary to Plaintiffs' assertions, the case was not litigated as a disparate treatment case from the start. Plaintiffs' complaints allege only a failure to accommodate theory. "A claim for religious discrimination under Title VII can be asserted under several different theories, including disparate treatment and failure to accommodate." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). But the elements of each theory differ. For each claim, a plaintiff must provide sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). And a plaintiff must provide sufficient factual matter to "put[] the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).

Here, Plaintiffs all similarly pleaded that "when Plaintiff raised her . . . sincere religious objection to taking the COVID-19 vaccine, the Defendant failed to make a good faith effort to accommodate Plaintiff's religious beliefs." Navarette Compl. ¶ 22. Their allegations support the elements of a failure to accommodate claim: "(1) [plaintiff] had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) [plaintiff] informed [their] employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected [plaintiff] to an adverse employment action because of [plaintiff's] inability to fulfill the job requirement." *Peterson*, 358 F.3d at 606. "If [plaintiff] makes out a *prima facie* failure-to-accommodate case, the burden then shifts to [defendant] to show that it

initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.* (internal quotation marks and citations omitted). Plaintiffs' complaints put Defendant on notice that it needed to adduce evidence to defend against a failure to accommodate claim.

In contrast, the elements of a disparate treatment claim are: (1) [plaintiff] is a member of a protected class; (2) [plaintiff] was qualified for [the] position; (3) [plaintiff] experienced an adverse employment action; and (4) similarly situated individuals outside [plaintiff's] protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Id.* at 603. Unlike a failure to accommodate claim, a disparate treatment claim requires an allegation that defendant acted with discriminatory intent. *Lavelle-Hayden v. Legacy Health*, No. 3:22-cv-01752-IM, 2024 WL 3822712, at *7 (D. Or. Aug. 14, 2024).

Plaintiffs assert that they pleaded a disparate treatment claim when they alleged that Defendant's failure to provide reasonable accommodation was "motivated by a religious animus and used as a pretext for unlawful discrimination[.]" Pl. Reply at 6–7; Navarrette Compl. ¶¶ 18, 29; Hunter Compl. ¶¶ 24, 35; Berra Compl. ¶¶ 17, 19–28; Trimmier Compl. ¶¶ 20, 31. The Court disagrees. Given that Defendant was required by law to implement a vaccine mandate and exemption process, the Court cannot infer religious discrimination based on the allegation that Defendant implemented a vaccine mandate and exemption process. Even assuming

that religious employees who requested a vaccine exemption constitute a protected class, conclusory allegations of religious animus and pretext, without more, do not permit the inference that Defendant's mandate and exemption process unlawfully discriminated against Plaintiffs.

Plaintiffs rely on *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) for the proposition that "it is not appropriate to require a plaintiff to plead facts establishing a *prima facie* case because the *McDonnell Douglas* framework does not apply in every employment discrimination case." Pl. Reply at 6 (quoting *Swierkiewicz*). But Plaintiffs' reliance on *Swierkiewicz* is misplaced. In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569–70 (2007), the Supreme Court narrowed, if not overruled, *Swierkiewicz*. The *Twombly* Court explained that *Swierkiewicz* narrowly addressed the Court of Appeals' "impermissibl[e] appli[cation] . . . [of] a heightened pleading requirement by insisting that *Swierkiewicz* allege 'specific facts' *beyond* those necessary to state his claim and the grounds showing entitlement to relief." *Id.* at 570 (emphasis added). Here, Plaintiffs fail to allege even the minimum facts necessary to state a disparate treatment claim and the grounds showing entitlement to relief.

          b.    *Plaintiffs Agreed to a Failure-to-Accommodate Discovery*

Second, since January 2023, the parties have engaged in a two-step phased discovery plan expressly focused on Plaintiffs' failure to accommodate claim. In January 2023, Defendant proposed the plan "in attempt to find a more efficient approach to this litigation given Plaintiffs' delays and failure to meet their discovery obligations[.]" Def. Resp. at 3; Lauren Decl., Ex. 1 at 2, ECF No. 43. Plaintiffs

expressly agreed to that plan, and the Court ordered that discovery be phased according to that plan. Jan. 2023 Status Conference Transcript, 19:12–21, ECF No. 23. Step one discovery ("Phase One") focused on the potentially dispositive issue of Defendant's undue hardship defense, an affirmative defense *specific* to the failure to accommodate claim. Def. Resp. at 18; Jan 2023 Transcript, 8:17–22, 11:18–12:08. But the potential efficiencies of the phased approach were never realized because Plaintiffs repeatedly sought materials outside the Phase One scope, Def. Resp. at 5–6, 7, 8–9, 12–13; Lauren Decl. ¶¶ 6, 20, Ex. 3; Riggs Decl. ¶ 4, ECF No. 44, and failed to comply with appropriate discovery requests and orders, Lauren Decl. ¶¶ 6, 7, 15; Exs. 6, 8, 10. "To date, Plaintiffs Berra, Hunter, and Navarrete have not provided to [Defendant] any medical records[,]" Lauren Decl. ¶ 7, Ex. 1. This is so, even though, in December 2022, the Court ordered Plaintiffs to produce those records. Dec. 2022 Status Conference, Transcript 9:08–09, ECF No. 18. "Plaintiff Trimmer provided some medical records, but they are incomplete." Lauren Decl. ¶ 7. Plaintiffs have not provided signed interrogatory verifications or privilege logs. Lauren Decl. Ex. 10. "Plaintiffs have not produced any documents to PeaceHealth since January 2023." *Id.* And despite Defendant's objections to Plaintiffs' discovery requests they believed to be outside the Phase One scope, Defendant worked with Plaintiffs to comply with their requests anyway. Lauren Decl., Exs. 5, 7, 8, 9, 10; Riggs Decl. ¶¶ 4, 5.

Despite the failure-to-accommodate-focused discovery plan, Plaintiffs now argue that the parties "issued discovery addressing both disparate treatment and failure to accommodate claims." Pl. Reply at 9. The Court disagrees. Phase One was

limited to Defendant's undue hardship defense, which is only a defense for a failure to accommodate claim, not a disparate treatment claim. If Phase One had proved dispositive, the parties would not have proceeded to Phase Two. Further, Defendant repeatedly explained this to Plaintiff. Def. Resp. at 5, 6–7; Lauren Decl. ¶¶ 6, 20, Exs. 3, 4; Riggs Decl. ¶¶ 4, 6. If Plaintiffs had not fully understood the discovery plan to which they agreed, they could have sought to amend it.

       c.    *Plaintiffs Could Have Alleged Other Claims Earlier*

Third, Plaintiffs assert that since they "always believed" that they had alleged a disparate treatment claim, they "did not believe [earlier] amendment was necessary to add a separate disparate treatment claim[.]" Pl. Reply at 11. Even if a disparate treatment claim had been alleged in the original complaint—and it was not—Plaintiffs also now seek to add a disparate impact claim, a hostile work environment claim, and a retaliation claim. Pl. Mot. at 3–4. Plaintiffs explain that they could not have alleged these other theories earlier because Defendant "improperly withheld" evidence from them. Pl. Mot. at 2. But even assuming the truth of that allegation, Plaintiffs, from the start, possessed sufficient facts to allege any of the Title VII religious discrimination theories including disparate treatment and hostile work environment because Plaintiffs would have directly observed or experienced the workplace circumstances from which discrimination could be inferred and alleged. Plaintiffs could have alleged the other theories at the outset but failed to do so.

        d.    *Prior Counsel's Decisions Are Imputed to New Counsel*

Finally, that Plaintiffs retained new counsel in mid-2023 does not justify the eleventh-hour introduction of new claims and theories of litigation that prejudice Defendant. Prior counsel's strategic litigation decisions are imputed to new counsel. "[Plaintiffs] voluntarily chose [their prior] attorney as [their] representative in the action, and [they] cannot now avoid the consequences of the acts or omissions of [their] freely selected agent." *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)). For that reason, "retaining new counsel does not provide the opportunity to re-strategize a lawsuit." *Zone Sports Ctr., LLC v. Cockayne*, No. 3:16-cv-02348-YY, 2019 WL 2070417, at *5 (D. Or. Feb. 27, 2019).

In sum, this case was litigated only as a failure to accommodate claim from the start. To add four new legal theories, two and a half years into litigation, would alter the nature of litigation, lay waste to prior discovery and other litigation efforts and require a new, substantially expanded discovery. Defendant would have to develop an entirely new set of defenses and be subjected to unfair additional substantial litigation costs that could have been avoided if Plaintiffs had timely amended their complaints. For these reasons, the Court finds that amendment at this late date would unfairly prejudice Defendant.

        2.    *Undue delay*

"Undue delay is delay that 'prejudices the nonmoving party or imposes unwarranted burdens on the court.'" *BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*, No. 08–cv–01086–AWI (SMS), 2011 WL 3328398, at *2 (E.D. Cal. Aug. 2, 2011)

(quoting *Mayeaux v. Louisiana Health Serv. and Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004)).  To assess undue delay, a court asks whether "the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990).  Undue delay weighs against granting leave to amend where a motion is so delayed as to prejudice a defendant. *See Lockheed Martin*, 194 F.3d at 986 ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint.").

Plaintiffs argue that they only recently became aware of their new claims because Defendant "improperly withheld" evidence from Plaintiffs for over a year. Pl. Mot. at 2.  Plaintiffs assert that the newly obtained evidence supports the new claims and allegations asserted in the proposed First Amended Complaint ("FAC") because it shows "a strong bias towards religious objectors including a scheme to use a sham religious exemption process as a pretext for the termination and retaliation against [P]laintiffs[,]" Pl. Mot. at 11.  Defendant responds that Plaintiffs "knew of the basis of their new claims in 2022 when they filed their original complaints."  Def. Resp. at 15.

The Court finds there has been undue delay in seeking leave to amend.  First, Plaintiffs failed to seek leave to amend before the March 2023 pleading deadline and failed to request extension of that deadline.  Second, as explained above, from the start Plaintiffs themselves were in possession of the facts needed to allege any of the other Title VII discrimination claims.  Third, Defendant repeatedly explained to

Page 13 – OPINION AND ORDER

Plaintiffs that their discovery requests exceeded the scope of a failure-to-accommodate claim. Plaintiffs were on notice of the need to amend. Finally, new counsel, Mr. Chackel, was aware as early as July 2023 of the need to amend. Defendant asserts that, at a July 13, 2023, conferral meeting, Mr. Chackel stated "for the first time" that he believed Plaintiffs had alleged an "intentional discrimination" claim in addition to a failure to accommodate claim in their original complaints. Def. Resp. at 8; Riggs Decl. ¶ 3. Defense council again explained that "the complaints clearly only allege failure-to-accommodate claims and that the parties had been operating with that understanding since the inception of the cases." Def. Resp. at 9; Riggs Decl. ¶ 4; Lauren Decl. ¶ 20. Defendant asserts, and Mr. Chackel does not disagree, that Mr. Chackel then informed Defendant that Plaintiffs would move to amend their complaints. Def. Resp. at 9; Riggs Decl. ¶ 4. At least as early as July 2023, Mr. Chackel was aware of the need to amend but waited fourteen additional months to do so.

Because Plaintiffs were in possession of the facts needed to allege additional Title VII claims in their original complaints or could have amended their complaints or requested to extend the pleading deadline months or even years ago, the Court finds that amendment at this late date creates undue delay.

3.    *Bad Faith*

A motion to amend is made in bad faith where there is "evidence in the record [that] would indicate a wrongful motive[.]" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987); *see also Wizards of the Coast LLC v. Cryptozoic Ent. LLC*,

309 F.R.D. 645, 651 (W.D. Wash. Aug. 4, 2015) ("In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt.").

The Court also finds bad faith on Plaintiffs' part. In January 2023, Defendant devised a phased discovery plan to expedite litigation that had stalled because Plaintiffs failed to prosecute their case and were not complying with discovery. Plaintiffs expressly agreed to the phased discovery plan, first on Defendant's undue hardship defense, then, more broadly on the failure to accommodate claim, but Plaintiffs have not adhered to that plan, nor sought to amend it. Instead, Plaintiffs stalled and thwarted discovery throughout the litigation. It took Plaintiffs over a year to provide their required disclosures and they still have not complied with the Court's order to provide their medical records—an order issued over two years ago. Plaintiffs now assert that their complaints included a disparate treatment claim all along, and they accuse Defendant of "stonewall tactics[,]" Pl. Mot at 15, "discovery abuses[,]" Pl. Reply at 3, 12, 13, 14, 15, and "misconduct[,]" *id.* at 14, for failing to produce materials that are outside the discovery scope, and "small-balling" for opposing Plaintiffs' Motion to Amend, Riggs Decl. ¶ 7. Plaintiffs had ample opportunity to seek corrective action and failed to do so. Plaintiffs' own dilatory and disruptive efforts are responsible for the problem they now face.

In sum, the Court finds prejudice to Defendant, undue delay, and bad faith, and accordingly denies Plaintiffs' Motion to Amend.

B.    *Rule 16*

When a party moves to amend the pleadings after the court-ordered pretrial pleading deadline has lapsed, that party "c[an] not appeal to the liberal amendment procedures afforded by Rule 15; [their] tardy motion ha[s] to satisfy the *more stringent* 'good cause' showing required under Rule 16." *AmerisourceBergen*, 465 F.3d at 952 (emphasis in original). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. "If that party was not diligent, the inquiry should end." *Id.*

Here, the March 2023 pleading deadline lapsed eighteen months before Plaintiffs moved to amend. Plaintiffs, the moving party, have the burden to show "good cause" to alter the Court's scheduling order. Plaintiffs argue that they show "good cause" to modify the Court's scheduling order because (1) "Plaintiffs always believed they had asserted both disparate treatment and failure to accommodate claims in the original Complaint[,]" so they "did not believe amendment was necessary[,]" Pl. Reply at 11; (2) Defendant was not cooperating with discovery, *id.* at 11–12; (3) Defendant "was deliberately withholding extensive documentation[,]" *id.* at 12; and (4) "the factual basis for the amendments [was] not revealed until the production of May 29, 2024[,]" *id.* at 15.

As explained above, Plaintiffs were in possession of the facts they needed to allege other Title VII theories in their original complaints. And they could have

earlier sought to amend those complaints or sought to extend the pleading deadline. If Plaintiffs believed that Defendant was not complying with discovery, they could have engaged the Court to resolve the matter or moved to compel. If Plaintiffs were not happy with the discovery scope or did not understand it, they could have sought to amend it. In addition, as discussed, Plaintiffs' counsel directly told Defendants that he intended to file a motion to amend the complaint but still waited more than a year to do so. Because Plaintiffs were not diligent, they do not show "good cause" to modify the Court's scheduling order.

II.    *Motion to Consolidate*

Plaintiffs move to consolidate all future "pleadings, motions[,] and court filings" in the matter because "there are common issues of fact and law among all Plaintiffs who worked at the same PeaceHealth hospital over the same time period, were all subject to the same policies and work environment and were all subject to the same conditions underlying the COVID-19 pandemic that allegedly justified Defendant's conduct." Pl. Mot. at 4.

Defendant opposes Plaintiffs' Motion to Consolidate because "each Plaintiff must prove her own claims, and it is possible that some but not all of them may survive dispositive motions." Def. Resp. at 35.

Federal Rule of Civil Procedure 42(a) authorizes courts to consolidate actions involving "common question[s] of law or fact." The court may consolidate for hearing or trial any and all matters at issue, including the entire case. *Id.* "In making this determination, the court must weigh 'the interest in judicial convenience against the

potential delay, confusion[,] and prejudice caused by consolidation.'" *Evraz Inc., N.A. v. Travelers Indem. Co.*, Case No. 3:11-cv-00233-AC, 2013 WL 6241984, at *1 (D. Or. Dec. 3, 2013) (quoting *Paxonet Commc'ns, Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1028 (N.D. Cal. 2003)).

Consolidation under Rule 42(a) is left to the broad discretion of the district court. *Investors Research, Co. v. United States Dist. Court*, 877 F.2d 777, 777 (9th Cir.1989). The party seeking consolidation bears the burden to show that the judicial economy and convenience benefits of consolidation outweigh any prejudice. *Indiana State Dist. Council of Laborers and Hod Carriers Pension Fund v. Gecht*, Nos. C-06-7274 EMC, C-06-7453 EMC, C-07-0698 EMC, 2007 WL 902554, at *1 (N.D. Cal. March 22, 2007).

The Court denies Plaintiffs' Motion to Consolidate because even though Plaintiffs worked at the same hospital over the same period and were subject to the same policies and work environment, each Plaintiff must prove her own failure to accommodate claim, including her own sincere religious-based reason for opposing the vaccine. Further, Defendant must prove, if relevant, its defense as to each Plaintiff. The potential gains of judicial economy and convenience are outweighed by the need to address unique questions of fact and law in each case.

## CONCLUSION

For the above reasons, Plaintiffs' Motions to Amend and Consolidate are denied. Navarette, ECF No. 37, Case No. 6:22-0181; Hunter, ECF No. 35, Case No. 6:22-0187; Berra, ECF No. 42, Case No. 6:22-0219; Trimmier, ECF No. 34, Case No. 6:22-0243.

It is so ORDERED and DATED this  14th  day of May 2025.


 /s/Ann Aiken
ANN AIKEN
United States District Judge